O'CONNOR, Plaintiff, v. HEMEYER, Defendant, ANDERSON, Appellant.

(216 N. W. 887.)

(File No. 5983. Opinion filed December 20, 1927.)

*Windsor Doherty,* of Winner, for Appellant.

*Walker & Gurley,* of Armour, for Respondent Hemeyer.

SHERWOOD, J. This is an action on a promissory note for $6,800 given by Henry C. Hemeyer and Ida Hemeyer, his wife, to plaintiff, secured by a second mortgage on southeast quarter, section 29-98-76.

Thereafter Henry C. Hemeyer died. Such proceedings were had in the probate court of Tripp county that this land, together with the northeast quarter. of the same section, was set over to Ida Hemeyer, and their seven children. Ida Hemeyer received one-third, and the seven children each two twenty-firsts of the land.

She was appointed guardian of the minor children. At the time of the decedent's death there was a first mortgage of $3,000 to the state of South Dakota on the southeast quarter; this second mortgage of $6,800 to respondent; also a mortgage of $2,000 on the northeast quarter.

Thereafter Ida Hemeyer, personally, and as guardian of her minor children, entered into a written contract with defendant, J. P. Anderson, to sell him both quarters for $12,800. Her two sons Hanse and Edward, who were of age, joined her in this contract. She further agreed to apply to the probate court for license to sell the interests of the minors, and Anderson agreed to bid at the sale the minors' proportionate share of the price of said land; all taxes and costs of probate to be paid out of the $1,000 coming to Ida Hemeyer. The sale of the guardian's interest was made through the county court, properly approved; and a deed given by Ida Hemeyer and her two sons who were of age to J. P. Anderson.

Anderson failed to pay the taxes and interest due on the mortgages, and O'Connor brought suit on the note against Ida Hemeyer and J. P. Anderson also to foreclose the second mortgage. Ida Hemeyer answered, alleging that J. P. Anderson, as a part of the consideration for the land, agreed to assume and pay the $6,800 note, and save her from any liability thereunder; that notice of this agreement was given to O'Connor, and it was mutually agreed between herself, O'Connor, and Anderson that, in consideration of Anderson's promise to assume the mortgage, O'Connor would release and discharge her.

A cross-complaint was also filed by Ida Hemeyer against said J. P. Anderson, in which she alleged, in substance:

That, as a part of the consideration for the sale of said land to Anderson, he agreed to assume and pay the note and mortgage in suit, and save her harmless from any liability thereon. Further, that the contract between herself and Anderson, as written, did not in fact contain a clause by which Anderson in express words

assumed and agreed to pay the mortgage; but said contract did not state the true agreement between the parties. That, when said contract was signed, she was mistakenly acting under the belief that it contained a correct statement of the contract between herself, her children, and Anderson, and did contain a promise on Anderson's part to assume and pay the mortgage debt, and save her harmless from personal liability thereon. That Anderson read the contract to her, and, as he read it, purported to read from said contract express words assuming said mortgage indebtedness. That the mistake on her part was caused by the fact that Anderson assured her that such contract did contain the agreement by which he assumed the mortgage, and read it to her in that way. That she would not have signed the contract to sell the land if she had not so believed. That she had received a copy of the agreement at the time it was made, and has retained the same ever since, but had not read or referred to it until this action was commenced, because until that time she had no reason to believe Anderson would not pay the mortgage debt and interest, as agreed; and she asked judgment that the contract be reformed by adding, after the words "subject to mortgages in the sum of $11,800 now of record," the following: "Which the said J. P. Anderson assumes and agrees to pay."

Defendant Anderson demurred to this cross-complaint for the reason "that it appears from the face thereof that there is a defect of parties defendant." This demurrer was overruled.

Thereafter Anderson answered this second amended cross-complaint, "specifically denying he ever promised or agreed to assume the mortgages," and alleging "that this court has no jurisdiction to reform the said contract * * * without making the said Hanse Hemeyer, Edward Hemeyer, Walter Hemeyer, Lawrence Hemeyer, and Clarence Hemeyer, and each of them, parties to this action; that each of the said parties are necessary parties defendant to the full determination of said action."

Upon the trial the court found:

That the contract made between the parties was that he should pay her $40 per acre for the land, an entire purchase price of $12,800, to be paid by Anderson's assuming and agreeing to pay the existing mortgages against said land, amounting to the sum of $11,800; and the $1,000 difference between the amount of said

mortgages and the price of said land was to be paid in cash by Anderson, less certain items of expenses which were to be deducted.

That Anderson had a written contract already prepared. That Ida Hemeyer and her children are people of German descent, have little education, and are wholly ignorant of the legal meaning of the language, terms, and expressions used in contracts to convey, and fully believed that, under the terms of said written instrument, as read to them by Anderson, and the language used therein, said Anderson covenanted and agreed to assume and pay all the mortgages against the land as a part of the price thereof, and would not have signed the instrument if they had not so understood its language and legal effect.

That Anderson, at the time the instrument was executed by Ida and her children, well knew and understood that Ida Hemeyer and her children understood that, by the terms and legal effect of the writing they were signing, Anderson was binding himself to assume and pay all the incumbrances then against said land, amounting to $11,800, and understood, as expressed in their language on the witness stand, that, by the terms of said written instrument, Anderson was to "overtake" said mortgages; and, had they not so understood the terms and legal effect of said instrument, they would not have executed the same. That at said time Anderson knew vendors, and especially Ida Hemeyer, were acting under the belief that the terms and legal effect of the instrument as read by Anderson was that he was to assume and pay all the mortgages against the land. That Anderson knew or suspected that the grantors, and especially Ida Hemeyer, would not have signed said instrument had they not been acting under the mistake that Anderson agreed to assume and pay the mortgages.

That, notwithstanding this knowledge and well-grounded suspicion, Anderson did not make known to said grantors, and especially to Ida Hemeyer, that he was not assuming and agreeing to pay said mortgages; but permitted them, and especially Ida Hemeyer, to execute said instrument under such mistaken belief, and without any effort whatever to correct such mistake.

That the true agreement, as made and understood by Ida Hemeyer and her children, was thereafter fully performed on their

part. That Anderson has failed to pay the taxes and interest, and there was then due on said mortgage $7,276. That Ida Hemeyer has been damaged by the failure of Anderson to pay the interest on said mortgage by the amount of the judgment which Frank O'Connor will recover against her.

As conclusions of law: That by his conduct Anderson is now estopped from denying an agreement on his part as claimed in the cross-complaint; that judgment must be entered against Ida Hemeyer and J. P. Anderson for the full amount due on the mortgage sought to be foreclosed in favor of Frank O'Connor, which was found to be $8,511.27; and that judgment should be entered in favor of Ida Hemeyer and against J. P. Anderson for $8,511.27, and costs.

From this judgment and the order denying his motion for new trial, defendant Anderson has appealed.

It is conceded O'Connor had a right to foreclose his mortgage, and no question is raised concerning the amount of the judgment entered against Ida Hemeyer and J. P. Anderson on the mortgage debt.

No evidence was introduced proving, or tending to prove, plaintiff, O'Connor, agreed to accept defendant Anderson in the place of Ida Hemeyer, or release her from said note.

There are 28 assignments of error, but only four main questions are presented by appellant. He states these as follows:

"(1) Whether the court has any jurisdiction to reform this contract without bringing in all of the parties to the contract, namely, Leo Hemeyer, Hanse, and Edward Hemeyer, who are all of legal age, and Lena, Lawrence, and Clarence Hemeyer, who are minors.

"(2) Whether the evidence is sufficient to warrant the court in reforming the contract.

"(3) Whether the conclusions of law and judgment are supported by the findings of fact.

"(4) Whether under the issues in this case the cross-complainant, Ida Hemeyer, is entitled to the relief which the court has given her."

Under No. 1 it is the contention of appellant that the seven children of Ida Hemeyer each owned an interest in the land

agreed to be transferred by this contract, and therefore each was a necessary party to an action to reform the contract.

It is doubtless the general doctrine, as appellant contends, "that all persons whose interest in the subject-matter, legal or equitable, will be affected by the decree, are necessary parties" to an action to reform a contract. But we fail to see how the interests of Ida Hemeyer's children could in any way be affected by the reformation asked for. None of them were personally liable to pay the O'Connor note or any deficiency arising on foreclosure sale. 27 Cyc. p. 1750, § 4.

The only reformation sought was to make Anderson liable to pay any deficiency on foreclosure to the same extent Ida was liable. It is manifest, if the interests of the children of Ida Hemeyer could in any way be affected by this reformation, it would be by adding a new surety, liable to pay the debts of the estate. These heirs could not be prejudiced or aggrieved by allowing such a reformation. They would have no right to appeal therefrom, and are therefore not necessary parties to this action.

Appellant was not in a position to raise this question. It was waived by answering after his demurrer to the cross-complaint was overruled. Lee v. Town of Mellette, 15 S. D. 586, 90 N. W. 855; Schwitz v. Thomas, 38 S. D. 180, 160 N. W. 734; Pierson v. Minnehaha County, 26 S. D. 462, Ann. Cas. 1913B, 386, 128 N. W. 616; Sogn v. Koetzle, 38 S. D. 99, 160 N. W. 520.

█ Under No. 2, Ida Hemeyer and three of her grown children testified, in substance, that Anderson said he would take over, or, as some of them expressed it, "overtake," all the mortgages, so that she would have nothing to worry about any more. Leo Hemeyer said:

"He said he would pay all the mortgages that were against the land."

Edward said:

"Anderson told them 'he would give her $40 an acre and he would overtake the mortgages of $11,800.'"

The testimony of the other children was substantially to the same effect. It is true Anderson denied this agreement, but, in addition to this, several letters were offered in evidence upon the trial. On February 18th Mrs. Hemeyer, offering the land to Anderson for sale, said:

"You can have that half section of land, and you have to take all the loans along with the land. * * * So please do me a favor, and take this all off my hands."

To this letter Anderson replied, offering her $40 an acre, or $12,800, "less the mortgages which is now against the land of $11,800, leaving a balance coming to you of $1,000."

On February 28th Mrs. Hemeyer accepted this offer, and said:

"If I can get that land off my mind, I will be getting along better, too, and the boys think say let it go, and I would not have nothing to worry about any more."

Later Anderson wrote Mrs. Hemeyer's attorneys, saying:

"I don't see any reason for Mrs. Hemeyer to be worried about it" (referring to O'Connor's threatened suit). "I don't blame her any for refusing to pay O'Connor's interest, as she is not the owner of the land."

And just prior to that he wrote Mrs. Hemeyer as follows:

"The papers are not back from Pierre yet, as I was over the abstract company this morning, and they told me that it sure would come back this week, and, as soon as I get this, I will send you the $200. Mr. O'Connor was here Saturday, but I did not see him. Expect he will write you again. Now don't let him bluff you into paying this int., you tell him you sold the land to me and it is up for Anderson to pay this interest.

"Yours truly,       J. P. Anderson."

Section 2020, R. C. 1919, provides:

"When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

This case comes under the provisions of this section. There was clearly a mistake on the part of Mrs. Hemeyer. She believed the contract he offered bound him to pay the mortgages, and, he knowing, or having good grounds to suspect, she so believed, permitted her to sign the contract. Under these facts, Mrs. Hemeyer is entitled to have the contract reformed to express her intention. Hines v. Bauer, 158 Minn. 298, 197 N. W. 483; Wilson v. Mori-

arty, 88 Cal. 207, 26 P. 85; De Rue v. McIntosh, 26 S. D. 42, 127 N. W. 532; Sioux Remedy Co. v. Lindgren, 27 S. D. 123, 130 N. W. 49; Ind. Harvester Co. v. Anderson, 45 S. D. 60, 186 N. W. 112, 22 C. J. 1163; Miller v. Kennedy, 12 S. D. 478, 81 N. W. 906.

■ As to No. 3, we think the conclusions of law and judgment are all supported by the findings; and, under the issues and evidence, Ida Hemeyer was entitled to the relief the court has given her. Section 2563, R. C. 1919.

We have carefully examined all the other assignments, and, finding no error, the judgment and order denying appellant's motion for a new trial are affirmed.

CAMPBELL, P. J., and GATES and POLLEY, JJ., concur. BURCH, J., disqualified, and not sitting.