**MARYLAND CASUALTY COMPANY, a corporation, Appellant,**

v.

**MORRIS OIL CORPORATION,**
Appellee.
No. 7142.

United States Court of Appeals
Fourth Circuit.
Argued April 13, 1956.
Decided May 19, 1956.

---

Edwin B. Meade, Danville, Va. (Meade, Talbott & Tate, Danville, Va., on brief), for appellant.

John D. Epperly and W. R. Broaddus, Jr., Martinsville, Va. (Broaddus, Epperly & Broaddus, Martinsville, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was brought to reform a policy of liability insurance issued by Maryland Casualty Company to Morris Oil Corporation in Virginia and to obtain a judgment in the sum of $5,041.60 which the oil company had been required to pay in damages and court costs to persons who had suffered property damage as a result of a mistake on its part in the misdelivery of gasoline in place of Kerosene. The case was tried by the District Judge who found for the oil company and the casualty company appealed.

The decision turns on the inquiry whether there was sufficient evidence to support the finding of the District Judge that as the result of a mutual mistake the policy issued to the oil company contained a provision that the insurance did

not apply to liability for accident due to erroneous delivery of gas for oil or oil for gas, if the accident should occur after the delivery had been completed, whereas it was the intention of the parties that the policy should cover liability for the erroneous delivery of products. There was such a misdelivery by the insured from which damages ensued after the policy was issued; and it is agreed that if the policy should be reformed the oil company is entitled to the sum claimed. It is also agreed that there was no fraud in the transaction.

The finding of mutual mistake by the District Judge was based upon the clear and positive testimony of officials of the oil company that they directed the agent of the casualty company to secure for them a policy of insurance which would cover the oil company for any liability that might arise from the erroneous delivery of oil products and that he promised to do so and also assured them that the policy which he delivered contained such a provision. The agent for the casualty company, who was its only witness, did not deny this testimony. He merely said he did not recall the conversations and at one point in his testimony said that, while he did not recall the statements attributed to him, a conversation between him and the representatives of the oil company about the coverage of erroneous delivery might have taken place. There was testimony on behalf of the insurance company that a type of policy differing from the one actually issued was used by the insurance company when it intended to cover erroneous deliveries, and the policy actually issued contained an endorsement under the caption Erroneous Delivery of Gasoline or Oil, which expressly provided that the insurance afforded by the policy for liability with respect to accidents arising out of erroneous delivery of products should not apply if the accident should occur after the operations had been completed.

██ Upon this state of the evidence we can find no error in the finding of mutual mistake by the District Judge. He was justified in accepting as true the statements of the witnesses for the oil company as against the vague and inconclusive testimony of the agent of the insurance company, who found himself in a difficult position; and since it is agreed by both parties that there was no fraud on his part, the only reasonable conclusion is that he was mistaken as to the nature of the contract. In taking this view, it was not unreasonable for the District Judge to reach the final conclusion which he announced, that the agent himself believed that the endorsement headed Erroneous Delivery of Gasoline or Oil, which actually excluded the desired coverage, had precisely the opposite effect. In our opinion, the judgment was in conformity with the law of Virginia, which requires one who seeks the reformation of a written contract on the ground of mutual mistake to prove his case by evidence plain and convincing and beyond a reasonable doubt. See State Farm Mutual Automobile Ins. Co. v. Miller, 194 Va. 589, 594, 74 S.E.2d 145; Newport News Shipbuilding & Dry Dock Co. v. Isherwood, 4 Cir., 5 F.2d 924, 927.

██ It is however contended that recovery is barred in this case by the negligent failure of the officials of the oil company to read the policy and see what was there plainly set out. None of them actually read the policy except to ascertain the limits of the liability of the insurance company. Ordinarily one is bound by the contents of a written contract which he has had an opportunity to read and has signed and he may not escape the liabilities which it imposes by claiming ignorance of its contents. See Ashby v. Dumouchelle, 185 Va. 724, 733, 40 S.E.2d 493; Peoples Life Ins. Co. v. Parker, 179 Va. 662, 667, 20 S.E.2d 485. The Supreme Court of Appeals of Virginia, however, has given its approval to the rule laid down in § 508 of the Restatement of Contracts, that the negligent failure of a party to know the facts as to which both parties are under a mistake does not preclude reformation;

and the Court has decreed reformation in cases involving insurance policies, which the insured failed to read, pointing out that they are rarely examined with care by the insured and that this lack of vigilance is excusable when it is shown conclusively that a mistake has been made by the insurance company as well as the insured. See Dickenson County Bank v. Royal Exchange Assur. of London, 157 Va. 94, 160 S.E. 13, 76 A.L. R. 1209; Bankers Fire Ins. Co. v. Henderson, 196 Va. 195, 83 S.E.2d 424. In Dickenson County Bank v. Royal Exchange Assur. of London, supra, the Court quoted with approval the statement that it depends on the facts and circumstances of each case whether the failure of the insured to examine the policy is such negligence as defeats his right to reformation, it being sometimes held that the negligence is fatal, but more often that it is not. We think that reformation was justified under the circumstances of the pending case.

Affirmed.